DENNIS SMITH *v.* CONNECTICUT LIGHT AND POWER COMPANY
(AC 21812)

Flynn, Bishop and West, Js.

Argued September 9—officially released November 19, 2002

*Kenneth W. Williams,* for the appellant (plaintiff).

*Richard S. Bartlett,* for the appellee (defendant).

*Opinion*

BISHOP, J. This is an appeal from the decision by the workers' compensation review board (board) affirming the determination by the workers' compensation commissioner (commissioner) that the plaintiff, Dennis Smith, did not sustain a compensable injury. We affirm the decision of the board.

The commissioner found the following pertinent facts. The plaintiff has been an employee of the defendant, Connecticut Light & Power Company, since 1971, when he was hired as a gas fitter. In 1985, the plaintiff sustained a compensable back injury that kept him out of work for three months. When he returned, he was assigned to light duty, though he claimed the work was

no different from his usual tasks. He then received notice that he had ninety days to find another position within the company or to face termination because he no longer was able to perform the duties of his job.

On September 29, 1986, the plaintiff was reassigned to the position of meter and service mechanic's helper, a job that paid less than his former job, though he was promoted approximately two and one-half years later. During 1990, the plaintiff sustained a compensable injury to his knee and was out of work for approximately three months. When he returned, he was able to perform his job with the aid of a knee brace.

The defendant thereafter assigned the plaintiff to work in the Bristol area, where, according to his testimony, he remained for two years despite requests to be rotated to different areas in which to work. His supervisor, Michael Nestico, reassigned the plaintiff to the Meriden region, where, according to the plaintiff's testimony, he was required to disconnect the electrical service of disgruntled friends and acquaintances who had failed to pay their electric bills. When the plaintiff requested not to be assigned to disconnect his godchild's service, he was not required to do so. Also, although his requests to be reassigned to another area were not granted, his requests for reassignment of certain work orders that presented a conflict were granted.

At the time of the injury at issue, the plaintiff had medical restrictions regarding lifting and climbing stairs. In addition, the defendant did not allow the plaintiff to work overtime because it would require that he work by himself, and the defendant did not want to place him in a situation that exceeded those restrictions.

On September 17, 1992, at approximately 2:45 p.m., the plaintiff was given two assignments to reconnect electrical service. His work shift, however, ended at

3:30 p.m. Because he was ineligible for overtime, he reported back to the office at 3:55 p.m., having failed to complete the two reconnects. The plaintiff placed the two work orders in the "incomplete" pile, marked them "CGI" ("can't get in") and went home.

When the plaintiff reported to work the next day, September 18, Nestico reprimanded him for failing to inform anyone that he had not completed the two reconnects. Nestico told him that letters of reprimand might be placed in his personnel file regarding the incident, as well as a prior incident in which he had been seen traveling outside his assigned work area.

The plaintiff testified that he believed that three letters of reprimand in a personnel file meant that his employment could be terminated.[1] As a result, he became angry during his conversation with Nestico, swore, kicked Nestico's desk, slammed the door to Nestico's office, left the building to go to his car, and then came back and stared at Nestico through an office window.

After leaving the building, the plaintiff immediately went to see his family physician, who prescribed medication and referred him to a psychiatrist. The plaintiff believed that other workers with compensable injuries had received better treatment than he had received. He also thought his employer had been seeking to terminate his employment because of his past workers' compensation claims. There was no evidence, however, that the plaintiff had sought a remedy through his union at that time.

Thomas Kennedy, a psychiatrist, diagnosed the plaintiff with posttraumatic stress disorder as a result of the cumulative effect of a series of events that caused the

---

[1] The plaintiff previously had received two letters of reprimand, the first on August 7, 1984, for not being "on call," and another, one week later, for sustaining an accident with a company vehicle.

plaintiff to fear losing his job, culminating with the events of September 18, 1992. An independent examiner, Donald Grayson, evaluated the plaintiff and diagnosed him as suffering from major depression and adjustment disorder secondary to perceived work-related stress. He explained that the plaintiff might have had difficulty in determining the severity and significance of certain statements due to his limited intellectual capacity. Michael Tulco, a neuropsychologist, evaluated the plaintiff and concluded that he is an individual of modest intelligence who has difficulty understanding ambiguous situations and who perceived himself helpless in the face of unfair criticism, which, in conjunction with the pressures he felt at work, led to his outburst.

The plaintiff remained out of work from September 18, 1992, until January 26, 1994, when the defendant terminated his employment.[2] The plaintiff filed a claim for compensation for his "mental-mental" injury, i.e., a mental injury caused by nonphysical stimuli. He also made allegations of retaliatory discrimination, claiming that the defendant had retaliated against him because he had filed two prior workers' compensation claims. He further claimed that this manifested itself in the form of harsher working conditions for him than for other similarly situated employees. The commissioner bifurcated those two claims, refusing to hear evidence on discrimination and stating that the issue was better left for a separate determination at the conclusion of the compensability claim.

With respect to the compensation claim, the commissioner found that the plaintiff suffered from depression and adjustment disorder, but found that the plaintiff's injury was not compensable. The commissioner rea-

---

[2] The plaintiff subsequently was reinstated on June 6, 1995, after a union grievance and arbitration proceeding.

soned that even though the injury occurred during the course of the plaintiff's employment, it did not arise out of his employment because he was not subjected to any greater stimuli than those of everyday employment life, despite his perceptions that the actions of the defendant amounted to discrimination and an effort to terminate his employment. The commissioner also found that the plaintiff had failed to prove that he was a victim of discrimination. The board affirmed the commissioner's findings, and this appeal followed.

On appeal, the plaintiff argues that the board and the commissioner (1) improperly found that the plaintiff did not suffer a compensable injury and made conclusions of law that were not supported by his findings of fact, and (2) improperly made findings with respect to the retaliatory discrimination claim.

When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. *Fair* v. *People's Savings Bank*, 207 Conn. 535, 538–39, 542 A.2d 1118 (1988). The commissioner has the power and duty, as the trier of fact, to determine the facts. See *Castro* v. *Viera*, 207 Conn. 420, 435, 541 A.2d 1216 (1988). "The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 118, 411 A.2d 924 (1979). Our scope of review of the actions of the board is similarly limited. *DeBarros* v. *Singleton*, 21 Conn. App. 107, 110, 572 A.2d 69 (1990), cert. denied, 215 Conn. 808, 576 A.2d 538 (1990).

I

ARISING OUT OF EMPLOYMENT

The plaintiff first claims that the commissioner improperly found that he did not sustain an injury that

is compensable under the Workers' Compensation Act, General Statutes § 31-275 et seq. The plaintiff raises two related issues. First, he alleges that the commissioner's factual findings were erroneous. Second, he alleges that the commissioner's legal conclusions were erroneous. We analyze those issues together and conclude that the commissioner properly found that the plaintiff's injury did not arise out of his employment.

The commissioner found that the plaintiff sustained a mental injury as a result of his unilateral misperception of the defendant's actions. He concluded that the plaintiff mistakenly believed that the defendant had discriminated against him in an effort to terminate his employment. As a result, the commissioner found that the plaintiff had failed to prove that the injury arose out of his employment.

To recover under the Workers' Compensation Act, a plaintiff must prove that the claimed injury is connected causally to the employment by demonstrating that the injury (1) arose out of the employment and (2) occurred in the course of the employment. *Bakelaar* v. *West Haven*, 193 Conn. 59, 67, 475 A.2d 283 (1984). The commissioner found that the plaintiff's injury occurred during the course of his employment, but that it did not arise out of his employment.

Our Supreme Court has held that "[a]n injury arises out of an employment when it . . . is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on. . . . [An] accidental injury or an occupational disease arising out of an employment is one which is causally traceable to the employment." (Citation omitted; internal quotation marks omitted.) *Ohmen* v. *Adams Bros.*, 109 Conn. 378,

384–85, 146 A. 825 (1929). The finding that an injury arises out of employment is a factual determination to be made by the trier, the burden of proof being upon the plaintiff. See *Spatafore* v. *Yale University*, 239 Conn. 408, 417–18, 684 A.2d 1155 (1996).

We hold that the commissioner's findings of fact were not clearly erroneous. He found that the plaintiff's injury did not result from unusually stressful or extraordinary conditions of his employment, but rather from the plaintiff's misperception of the significance and severity of those events. His injury was not the result of risks involved in, or incident to, his employment or a result of the conditions under which it was to be performed. See *Ohmen* v. *Adams Bros.*, supra, 109 Conn. 385. The commissioner found that the plaintiff had experienced no event any more stressful than those encountered in the everyday workplace. As such, the commissioner concluded that the plaintiff's injury did not arise out of his employment and was, therefore, not compensable. We hold that this conclusion did not result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. See *Adzima* v. *UAC/Norden Division*, supra, 177 Conn. 118.[3]

## II

## THE DISCRIMINATION CLAIM

The plaintiff next claims that the commissioner improperly made findings regarding the discrimination claim without allowing the plaintiff to introduce evidence on the issue. We disagree.

During the hearings, the commissioner decided to bifurcate the plaintiff's compensability and discrimina-

[3] Counsel for both parties briefed the question of whether mental-mental injury claims are compensable. We do not need to reach that issue because the commissioner's finding that the injury did not arise out of the plaintiff's employment is dispositive regardless of the type of injury.

tion claims, and to make findings regarding the discrimination claim after the conclusion of the compensability issue. In his findings, the commissioner determined that the plaintiff had failed to establish, by a preponderance of the evidence, that he was discriminated against or treated differently from other employees on the basis of his injuries.

The plaintiff, in his brief to this court, claims that he had alleged retaliatory discrimination under General Statutes § 31-290a[4] in his initial claim to the workers' compensation commission. Our review of the record has failed to disclose the existence of a complaint filed with the workers' compensation commission, as required by § 31-290a (b) (2). Even if we assume arguendo that the plaintiff had presented the discrimination issue as part of his claim for compensation, we note that the plaintiff alleges that the commissioner improperly considered the discrimination claim after bifurcating it from the claim for compensation and that bifurcation effectively precluded any evidence of discrimination from being introduced at the compensability hearings. Such evidence, it is contended, would have shed light as to the truth of the plaintiff's feelings and perception of his work conditions.

The plaintiff is precluded from raising that issue for the first time on appeal. When the commissioner issued his findings, he specifically found that the plaintiff had failed to establish that the defendant had discriminated against him. That issue should have been directly raised

---

[4] General Statutes § 31-290a provides in relevant part: "(a) No employer . . . shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits . . . .

"(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court . . . or (2) *file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. . . .*" (Emphasis added.)

before the commissioner through either a motion for correction of findings; Regs., Conn. State Agencies § 31-301-4;[5] or through a motion for rectification or articulation. Practice Book § 66-5.[6]

The plaintiff followed neither approach and instead raises the issue for the first time on appeal. Because the plaintiff failed to pursue the issue before the commissioner, he is precluded from doing so on appeal. See Practice Book § 60-5.[7] The plaintiff has offered no compelling reason for us to deviate from the requirement that to consider that issue, it should have been raised first before the commissioner.

The decision of the worker's compensation review board is affirmed.

In this opinion the other judges concurred.

---

[5] Section 31-301-4 of the Regulations of Connecticut State Agencies provides in relevant part: "If the appellant desires to have the finding of the commissioner corrected he *must* . . . file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for . . . ." (Emphasis added.)

[6] Practice Book § 66-5 provides in relevant part: "A motion seeking corrections in the transcript or the trial court record or seeking an articulation or further articulation of the decision of the trial court shall be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought. . . ."

[7] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."