# JACQUELINE CABLE *v.* BIC CORPORATION ET AL.
## (AC 22840)

Schaller, Flynn and Mihalakos, Js.

Argued May 1—officially released September 2, 2003

*Joseph  J.  Passaretti,  Jr.*,  for  the  appellants (defendants).

*John J. D'Elia,* for the appellee (plaintiff).

*Opinion*

FLYNN, J. The defendants, Bic Corporation (Bic) and Liberty Mutual Insurance Company, appeal from the finding and award of the workers' compensation commissioner rendered in favor of the plaintiff, Jacqueline Cable, on her discriminatory discharge claim. On appeal, the defendants claim that the commissioner (1) failed to articulate the basis of the alleged discrimination, (2) applied the incorrect evidentiary standard by failing to apply the correct burden shifting analysis and (3) improperly concluded that the plaintiff met her burden of proof.[1] We affirm the commissioner's decision.

In his February 19, 2002 decision, the commissioner set forth, inter alia, the following relevant facts. The plaintiff was an employee of Bic for nearly thirty-two years. She had several work-related injuries that caused

---

[1] Initially, we note that the appellants have failed to comply with various sections of the Practice Book.

Practice Book § 67-4 (c) provides that an appellant is required to include in its brief "[a] statement of the nature of the proceedings and of the facts of the case bearing on the issues raised. The statement of facts shall be in narrative form, *shall be supported by appropriate references to the page or pages of the transcript or to the document upon which the party relies,* and shall not be unnecessarily detailed or voluminous." (Emphasis added.) The defendants have provided no references to the transcripts or other documents from which their facts were drawn. "While a failure to comply fully with [Practice Book § 67-4 (c)] may preclude appellate review . . . such review, while more difficult, may nevertheless be appropriate." *Haynes* v. *Bronson,* 13 Conn. App. 708, 710, 539 A.2d 592 (1988).

Practice Book § 67-4 (d) provides in relevant part that "[t]he argument on each point shall include a separate, brief statement of the standard of review the appellant believes should be applied." The appellants have failed to provide this court with the appropriate standard of review for their claims. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.,* 245 Conn. 1, 20–21, 717 A.2d 77 (1998) (noting noncompliance with requirement in Practice Book § 4064C (d), now § 67-4 (d), as to brief statement of standard of review but proceeding with review).

The plaintiff has made similar omissions in her brief.

her to lose time from work throughout her many years of service.

The plaintiff sustained an injury on November 10, 1989, which caused several conditions that required various surgeries to her upper extremities between 1989 and 2001. In 1993, the parties filed a voluntary agreement setting a weekly rate of compensation for an injury to the plaintiff's left thumb. The parties entered into another voluntary agreement in early 1994 setting a rate of compensation and establishing a 15.5 percent permanent partial disability of the plaintiff's left master hand. In early 1995, the parties entered into another voluntary agreement awarding an 8.5 percent permanent partial disability of the right nonmaster hand of the plaintiff. In February, 2000, the parties entered into another voluntary agreement establishing a 14 percent permanent partial disability of the right nonmaster hand of the plaintiff, with 8.7 percent having previously been paid.

On March 29, 2000, after her fourth surgery, the plaintiff returned to work in a light duty capacity, securing a ball popper position with Bic. In the spring or summer of 2000, after Bic eliminated the ball popper position by combining it with a utility operator position, the plaintiff sought that combined position, with modifications, but Bic refused to award her the position. In August, 2000, the plaintiff secured an ink inspector position, but, after three weeks of performing that job, she had difficulties with her hands.

In early January, 2001, the plaintiff returned to the ink inspector position after Bic made some minor modifications to the job to accommodate the plaintiff's work-related hand disabilities. The plaintiff received oral warnings about her failure to attain the necessary rapidity in performance of that job and about shutting down the machine, but her inability to attain the necessary

rapidity was due to her work caused disability. Nevertheless, the plaintiff did not receive any written warnings concerning her performance. On January 31, 2001, however, just four weeks after she returned to work, Bic laid off the plaintiff.

The plaintiff alleged, and the commissioner found, that her January 31, 2001 termination from employment was a discriminatory discharge under General Statutes § 31-290a, and the commissioner awarded her certain remedies provided under § 31-290a (b) (2).[2] Additionally, the plaintiff sought, and the commissioner awarded, permanent partial disability benefits for an additional 6 percent permanent partial impairment of the plaintiff's left master hand. The commissioner based that award on the conclusion of the plaintiff's treating physician, Robert B. Tross,[3] that, after further surgery to the plaintiff's hand in April, 2001, she had this additional

---

[2] General Statutes § 31-290a provides in relevant part: "(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to [such employee] pursuant to the provisions of this chapter.

"(b) Any employee who is so discharged or discriminated against may . . . (2) file a complaint with the [chairperson] of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the [chairperson] shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of [the rendered] decision. The commissioner may award the employee the reinstatement of [the employee's] previous job, payment of back wages and reestablishment of employee benefits to which [the employee] otherwise would have been eligible if [the employee] had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[3] The commissioner, in his findings, refers to the plaintiff's authorized treating physician as Doctor Luther Tross.

disability. The defendants appeal from the finding and award of the commissioner.

I

The defendants initially claim on appeal that the commissioner improperly failed to articulate the basis of the alleged discrimination for which the commissioner awarded remedies to the plaintiff. The defendants argue that the commissioner's only stated basis for the plaintiff's award was that her work-related injury prevented her from obtaining the necessary rapidity to perform her job properly. If the commissioner had an additional basis for his conclusion, the defendants argue in their brief, "then his failure to so articulate such reason is error."[4]

In this case, "the plaintiff had the choice of filing a complaint with the workers' compensation commission or bringing an action in the Superior Court. Because these proceedings are comparable, the commissioner acted, in effect, as the trial court in hearing the plaintiff's claims. For example, pursuant to General Statutes § 31-290a (b) (1), the trial court makes findings of fact and conclusions of law, and, pursuant to § 31-290a (b) (2), [t]he workers' compensation commissioner has the power and the duty to determine the facts, and we will not review facts reasonably found by the commissioner. The commissioner's conclusions that are drawn from those facts must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . .

"Under normal circumstances, this court will not remand a case to correct a deficiency that the appellant

---

[4] When the defendants were asked specifically at oral argument whether they were claiming "that the commissioner's findings [were] not adequate to support the claim or [whether] there wasn't sufficient evidence to produce these findings," counsel for the defendants responded that he was claiming "that the commissioner's findings [were] not sufficient."

should have remedied. . . . The plaintiff elected to bring [a] complaint to the workers' compensation commission rather than to proceed in the Superior Court. Under these circumstances, the [defendants were] not absolved of the requirement of filing a motion for articulation and seeking appropriate review in this court, where such review was necessary to create an adequate record for our review of [the defendants'] claim. Without an adequate record on which to review the findings of the trial court, this court must assume that the trial court acted properly. . . . Likewise, [where the defendants fail to provide an] adequate record from which to review the decision of the commissioner, we must assume that the commissioner acted properly." (Citations omitted; internal quotation marks omitted.) *Plati* v. *United Parcel Service*, 33 Conn. App. 490, 494–95, 636 A.2d 395 (1994); see also *Sidella* v. *Kelly Services, Inc.*, 41 Conn. App. 116, 118, 675 A.2d 1 (1996).

When the commissioner issued his finding and award in the present case, he specifically found that the plaintiff had been discharged discriminatorily in violation of § 31-290a. The need for articulation or clarification of the findings made in support of this factual conclusion should have been raised directly before the commissioner through either a motion for correction of findings; Regs., Conn. State Agencies § 31-301-4;[5] or through a motion for rectification or articulation. Practice Book § 66-5.[6]

[5] Section 31-301-4 of the Regulations of Connecticut State Agencies provides in relevant part: "If the appellant desires to have the finding of the commissioner corrected he *must* . . . file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for . . . ." (Emphasis added.)

[6] Practice Book § 66-5 provides in relevant part: "A motion seeking corrections in the transcript or the trial court record or seeking an articulation or further articulation of the decision of the trial court shall be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought. . . ."

In this case, as in *Smith* v. *Connecticut Light & Power Co.*, 73 Conn. App. 619, 808 A.2d 1171 (2002), the defendants "followed neither approach and instead [raise] the issue for the first time on appeal. Because the [defendants] failed to pursue the issue before the commissioner, [they are] precluded from doing so on appeal. See Practice Book § 60-5.[7] The [defendants have] offered no compelling reason for us to deviate from the requirement that to consider that issue, it should have been raised first before the commissioner." *Smith* v. *Connecticut Light & Power Co.*, supra, 628. Accordingly, we decline to review this claim.

## II

The defendants next claim that the commissioner applied the incorrect evidentiary standard by failing to apply the burden shifting analysis set forth by our Supreme Court in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 578 A.2d 1054 (1990). We are not persuaded.

We begin by setting forth our standard of review. The defendants' claim requires that we determine whether the commissioner applied the appropriate legal standard in evaluating the plaintiff's claim of discriminatory discharge. That issue presents a question of law, and our review is, therefore, plenary. See *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002) (where issue requires that reviewing court decide whether trial court applied correct legal standard, review is plenary).

---

[7] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

"The burden of proof in actions involving § 31-290a is stated in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* [supra, 216 Conn. 53], and *Chiaia* v. *Pepperidge Farm, Inc.,* 24 Conn. App. 362, 366, 588 A.2d 652, cert. denied, 219 Conn. 907, 593 A.2d 133 (1991). The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [the] burden of persuading the factfinder that [the plaintiff] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) *Knoblaugh* v. *Marshall,* 64 Conn. App. 32, 38, 779 A.2d 218, cert. denied, 258 Conn. 916, 782 A.2d 1243 (2001).

In the present case, as in *Chernovitz* v. *Preston Trucking Co.,* 52 Conn. App. 570, 573, 729 A.2d 222 (1999), "[t]he commissioner's decision does not contain specific statements as to the standard of proof or the burden of proof. Briefs of the parties were submitted to the commissioner, however, in which the plaintiff correctly set out the burden of proof as stated in *Ford.*" Id., 575. Although we conclude that it was improper for the commissioner to fail to specifically set forth the *Ford* burden shifting analysis in his finding and award, because this analysis clearly was set forth in the briefs

of the parties, and there is no indication that the commissioner did not apply that test in rendering his decision, we are not persuaded that such analysis was not performed by the commissioner. Further, the defendants did not seek an articulation as to whether the commissioner did, in fact, apply this burden shifting analysis.

After the hearings on the plaintiff's discriminatory discharge claim, the commissioner issued his finding and award, in which he stated in his ultimate finding that the plaintiff was "entitled to reinstatement of employment *because her separation from work was a discriminatory discharge under Section 31-290a.*" (Emphasis added.) Despite this clear finding, the defendants urge us to overturn the commissioner's decision on the ground that the commissioner failed to apply the *Ford* burden shifting analysis in his decision and that the subordinate factual findings do not support the ultimate conclusion that the plaintiff's separation from work was a discriminatory discharge. The defendants ask in their brief: "Where is the discrimination? On what does the [plaintiff] rely to set forth a prima facie case? Where is the evidence that the commissioner applied the burden-shifting analysis set for by *Ford*?"

"It is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Citations omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998). The defendants did not move for an articulation or rectification in relation to the commissioner's finding and award.

Accordingly, the defendants have failed to establish that the commissioner did not apply the appropriate legal standard. In the absence of a motion for articulation, we will not assume that the commissioner failed to apply the proper legal standard simply because he did not fully articulate his reasoning. Consequently, on the basis of the record provided to us, we reject the defendant's argument that the commissioner applied the incorrect legal standard.

## III

The defendants next claim that, even if the commissioner did employ the correct evidentiary standard, the plaintiff did not meet her burden of proof, by a fair preponderance of the evidence, that Bic discharged her in a discriminatory manner in violation of § 31-290a. Additionally, the defendants claim that even if the plaintiff did meet her initial burden of proof, they successfully rebutted any presumption of discrimination. The defendants' claim, that the plaintiff did not meet her burden of proof by a fair preponderance of the evidence, is without merit. There was evidence presented to support the award in favor of the plaintiff. Whether such evidence satisfied the plaintiff's burden of proof in this case was a question for the commissioner to decide.

"A workers' compensation commissioner has the power to determine the facts and we cannot disturb them when reasonably found." *Chernovitz* v. *Preston Trucking Co.*, supra, 52 Conn. App. 573. "The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Knoblaugh* v. *Marshall*, supra, 64 Conn. App. 37. It is also within the province of the commissioner to determine credibility and the effect

to be given the testimony of witnesses. See id., 39. Additionally, it is the commissioner's right to consider evidence, draw logical deductions and make reasonable inferences from facts proven. See id., 37.

Upon reviewing the transcript of the hearing and the findings of the commissioner, we conclude that there is sufficient evidence in the record to support the commissioner's ultimate finding that the plaintiff's separation from Bic was a discriminatory discharge. The evidence presented to the commissioner was sufficient for him to conclude reasonably that the plaintiff made out a prima facie case and successfully proved her claim by a fair preponderance of the evidence.

A review of the testimony at the hearing reveals that the plaintiff was employed in a point and support position in March, 2000, when she began having trouble with her previously injured left hand. She underwent surgery to correct this and missed approximately four weeks of work. Upon the plaintiff's return to work in April, 2000, Bic notified her that the point and support position had been changed and reclassified as a utility job. The plaintiff requested that some modifications be made to the utility position to accommodate her work-related disability, but Bic did not offer that reclassified position to the plaintiff, despite her having experience with all phases of it. Rather, Bic presented the plaintiff with a list of positions that she could "bump" into. The plaintiff was allowed only to observe two of the seven listed positions, however. Robin Stricoff, Bic's ergonomist, also told the plaintiff that she would be unable to perform one of those two positions. The plaintiff, therefore, selected the only position that was left, that of ink inspector.

After attempting to perform the ink inspector job in October, 2000, the plaintiff experienced additional work-related discomfort to her hands and was unable to

continue working after October 20, 2000. In November, Tross, her treating physician, met with representatives from Bic and suggested several modifications to the ink inspector position, and, after these modifications were made, the plaintiff returned to work on January 2, 2001, in the ink inspector position.

Jackie Sebas, a union steward, testified that Laurie DeSantis, the plaintiff's supervisor, had stated that she was willing to give the plaintiff additional time to build up her speed and that DeSantis knew and understood the issues surrounding the plaintiff's hand injuries. Steve Burgert, Bic's manager of safety and health services, testified that management understood that the plaintiff would never be able to perform the ink inspector position at top speed during her qualifying period.

Sebas also testified that DeSantis had told her that the plaintiff was doing "pretty well" in the ink position, and Sebas never saw any writing that would contradict that representation. Additionally, Sebas explained that there was a two week qualifying period for the ink inspector position and that any extensions of that period had to be in writing. If an extension was not requested, pursuant to the union contract, the employee seeking to qualify was deemed qualified upon the expiration of the initial two week period. In the case of the plaintiff, Bic never sought an extension of the two week qualifying period.

The plaintiff was told that she would have an eight week training period for the ink inspector position, but was laid off on January 31, 2001, following only eighteen days of actual training in this new position, for failing to attain the necessary rapidity in performance, after having received absolutely no written warnings concerning her job performance. This dismissal occurred despite both DeSantis' and Burgert's acknowledgment that they knew at the outset that the plaintiff would

not be able to attain the normal rapidity during her training period and that this would not cause them concern.

The plaintiff received oral warnings about moving more quickly, but DeSantis never gave her instruction on the proper manner in which to perform her job and discover defects, nor did she ever tell the plaintiff that she was in danger of losing her job because of her inability to move more quickly. Additionally, Burgert stated that there was no written request to extend the plaintiff's qualifying period, and he was unaware of any verbal request having been made. There was no written job description for the ink inspector position that indicated any particular speed at which the job needed to be performed. DeSantis did not bring any documents to the hearing to show that the plaintiff's work was performed too slowly or improperly, despite the acknowledgment that performance related documents normally were kept by Bic. DeSantis stated that the testing materials used to assess the plaintiff's performance were "missing."

Additionally, DeSantis testified that she was unhappy that the plaintiff had bumped another employee from the ink inspector position, that she thought that the plaintiff was not trying to learn the position, that the plaintiff's hands got in her way, and that she thought the plaintiff was faking injury to her hands during the first couple of hours of training.

After being laid off, the plaintiff applied for several other positions with Bic, and, on February 12, 2001, Burgert offered the plaintiff the utility position, which she accepted. Sebas also testified that Dinnette Kennedy, a human resource representative with the authority to offer the plaintiff this position, did make such an offer, which the plaintiff accepted. Her union representative, however, later advised the plaintiff that Bic

would not award her the utility position. Sebas also testified that this offer was taken away.

"[Once] the plaintiff meets [her] initial burden [of proof], the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or the commissioner] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) *Barrett* v. *Hebrew Home & Hospital, Inc.*, 73 Conn. App. 327, 333–34, 807 A.2d 1075 (2002).

Despite any claimed nondiscriminatory reason advanced by Bic for laying off the plaintiff, we conclude that there was sufficient evidence in the record to support the commissioner's ultimate finding that the plaintiff's discharge from Bic was discriminatory in violation of § 31-290a. The plaintiff produced evidence that was sufficient to support the conclusion that she satisfied both her burden of proof and her burden of persuasion. The testimony discussed, coupled with the factual findings made by the commissioner, supports the award to the plaintiff.

The decision of the workers' compensation commissioner is affirmed.

In this opinion the other judges concurred.