JACQUELINE CABLE *v.* BIC CORPORATION ET AL.
(SC 17080)

Sullivan, C. J., and Borden, Katz, Vertefeuille and Zarella, Js.

---

Argued April 14—officially released August 3, 2004

*Joseph J. Passaretti, Jr.*, with whom, on the brief, was *Lisa M. Mullin*, for the appellants (defendants).

*John J. D'Elia*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. In this certified appeal, the defendants, Bic Corporation (Bic), and Liberty Mutual Insurance Company, appeal from the Appellate Court's judgment affirming the decision of the workers' compensation commissioner for the fourth district (commissioner) in favor of the plaintiff, Jacqueline Cable, on her claim of discriminatory discharge from employment. See *Cable* v. *Bic Corp.*, 79 Conn. App 178, 830 A.2d 279 (2003). The defendants claim that the Appellate Court improperly affirmed the commissioner's decision

in which he concluded that the defendants wrongfully had terminated the plaintiff's employment in violation of General Statutes § 31-290a (a)[1] without reciting the burden-shifting analysis required by *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990).[2] We disagree with the Appellate Court's determination that the commissioner was required to *recite* the relevant legal standard in his finding and award. We nevertheless conclude, however, that the Appellate Court properly determined that, in the absence of a more complete record, it could not conclude that the commissioner had not *applied* the relevant burden-shifting analysis to the facts of the case. We therefore affirm the judgment of the Appellate Court.

The following relevant facts and procedural history, as found by the commissioner in his decision of February 19, 2002, are fully set forth in the Appellate Court's opinion. "The plaintiff was an employee of Bic for nearly

---

[1] General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter."

[2] The *Ford* burden-shifting analysis provides: "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54.

thirty-two years. She had several work-related injuries that caused her to lose time from work throughout her many years of service.

"The plaintiff sustained an injury on November 10, 1989, which caused several conditions that required various surgeries to her upper extremities between 1989 and 2001. In 1993, the parties filed a voluntary agreement setting a weekly rate of compensation for an injury to the plaintiff's left thumb. The parties entered into another voluntary agreement in early 1994 setting a rate of compensation and establishing a 15.5 percent permanent partial disability of the plaintiff's left master hand. In early 1995, the parties entered into another voluntary agreement awarding an 8.5 percent permanent partial disability of the right nonmaster hand of the plaintiff. In February, 2000, the parties entered into another voluntary agreement establishing a 14 percent permanent partial disability of the right nonmaster hand of the plaintiff, with 8.7 percent having previously been paid.

"On March 29, 2000, after her fourth surgery, the plaintiff returned to work in a light duty capacity, securing a ball popper position with Bic. In the spring or summer of 2000, after Bic eliminated the ball popper position by combining it with a utility operator position, the plaintiff sought that combined position, with modifications, but Bic refused to award her the position. In August, 2000, the plaintiff secured an ink inspector position, but, after three weeks of performing that job, she had difficulties with her hands.

"In early January, 2001, the plaintiff returned to the ink inspector position after Bic made some minor modifications to the job to accommodate the plaintiff's work-related hand disabilities. The plaintiff received oral warnings about her failure to attain the necessary rapidity in performance of that job and about shutting down

the machine, but her inability to attain the necessary rapidity was due to her work caused disability. Nevertheless, the plaintiff did not receive any written warnings concerning her performance. On January 31, 2001, however, just four weeks after she returned to work, Bic laid off the plaintiff.

"The plaintiff alleged, and the commissioner found, that her January 31, 2001 termination from employment was a discriminatory discharge under . . . § 31-290a (a), and the commissioner awarded her certain remedies provided under § 31-290a (b) (2).[3] Additionally, the plaintiff sought, and the commissioner awarded, permanent partial disability benefits for an additional 6 percent permanent partial impairment of the plaintiff's left master hand. The commissioner based that award on the conclusion of the plaintiff's treating physician . . . that, after further surgery to the plaintiff's hand in April, 2001, she had this additional disability." *Cable* v. *Bic Corp.*, supra, 79 Conn. App. 179–82.

The defendants appealed from the commissioner's decision to the Appellate Court,[4] claiming that the com-

---

[3] General Statutes § 31-290a (b) provides in relevant part: "Any employee who is so discharged or discriminated against may . . . (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court."

[4] "Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court." General Statutes § 31-290a (b).

missioner improperly had: (1) failed to articulate the basis of the alleged discrimination; (2) failed to apply the burden-shifting analysis enunciated in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54; and (3) determined that the plaintiff had met her burden of proof. *Cable* v. *Bic Corp.*, supra, 79 Conn. App. 179. The Appellate Court declined to review the defendants' first claim because it had not been raised before the commissioner. Id., 184. As to the remaining claims, the Appellate Court concluded that, although the commissioner should have set forth the *Ford* burden-shifting analysis in his decision, there was no evidence that he did not employ that relevant legal standard, which was set forth in the parties' briefs; id., 185–86; and that there was sufficient evidence to support the commissioner's finding that the plaintiff had established a prima facie case of discrimination in violation of § 31-290a. Id., 191. Accordingly, the Appellate Court rendered judgment affirming the commissioner's decision. Id.

We thereafter granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the [commissioner's] decision?" *Cable* v. *Bic Corp.*, 266 Conn. 920, 835 A.2d 60 (2003). After reviewing the record and the parties' briefs, and after considering the claims of the parties during oral argument in this court, however, we now rephrase the certified issue in the following, more precise, manner: Did the Appellate Court properly conclude that the commissioner had applied the correct legal standard despite the fact that the finding and award did not expressly recite that relevant legal standard? See, e.g., *Stamford Hospital* v. *Vega*, 236 Conn. 646, 648–49 n.1, 674 A.2d 821 (1996) (this court may rephrase certified questions in order to render them more accurate in framing issues that case presents). This appeal followed.

On appeal in this court, the defendants advance several claims. The gravamen of their appeal, however, is that the Appellate Court improperly concluded that the commissioner had applied the *Ford* burden-shifting analysis despite the fact that the finding and award was devoid of any reference to *Ford*.[5] We disagree with the Appellate Court's determination that the commissioner's failure to recite the *Ford* burden-shifting analysis in his finding and award was improper. We nevertheless conclude, however, that the Appellate Court properly determined that, without a more complete record, it could not conclude that the commissioner had not applied the relevant burden-shifting analysis to the facts of the present case. Accordingly, we affirm the judgment of the Appellate Court.

---

[5] The defendants, in their brief to this court, raise the following claims: (1) the Appellate Court improperly penalized the defendants for failing to file a motion to correct or a motion to articulate; (2) the Appellate Court improperly relied upon the civil rules of procedure by requiring the parties to file a motion for articulation; (3) in the workers' compensation system, a motion for articulation pursuant to Practice Book § 66-5, is identical to a motion to correct pursuant to § 31-301-4 of the Regulations of Connecticut State Agencies; (4) the plaintiff, having brought her action through the workers' compensation system, is bound by its procedures; (5) the commissioner improperly failed to apply the *Ford* analysis to the facts presented; and (6) the Appellate Court improperly failed to apply the *Ford* analysis in affirming the commissioner's conclusion that the plaintiff wrongfully was terminated. Although the defendants proffer these six separate claims, in substance, each claim challenges the Appellate Court's conclusion that, although the commissioner should have included the *Ford* burden-shifting analysis in his finding and award, the record produced by the defendants was insufficient to establish that the commissioner had failed to apply that analysis to the facts of the present case. Accordingly, we limit our analysis to this issue.

The defendants also raise the following additional claims: (1) the plaintiff failed in her burden of proving a prima facie case of discrimination; (2) the defendants successfully rebutted any presumption of discrimination by producing evidence of a legitimate nondiscriminatory reason for the actions taken against the plaintiff; and (3) the plaintiff's inability to perform her job as a result of her work-related injury does not form a basis for discriminatory discharge. These issues are beyond the scope of the certified question as reformulated by this court, and we therefore decline to address them.

We begin by setting forth the applicable standard of review. The reformulated certified issue requires us to determine whether the Appellate Court correctly concluded that the commissioner had employed the relevant legal standard even though he did not expressly indicate so in his finding and award. This presents a question of law over which our review is plenary. *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002) (plenary review applied to issue of whether correct legal standard was applied).

We first address the Appellate Court's conclusion that the commissioner's finding and award improperly failed to recite the *Ford* burden-shifting analysis. The substance of a commissioner's finding and award is limited by § 31-301-3 of the Regulations of Connecticut State Agencies. Specifically, § 31-301-3 of the regulations provides: "The *finding* of the commissioner should contain *only the ultimate relevant and material facts* essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties. It *should not contain* excerpts from evidence or merely evidential facts, nor *the reasons for his conclusions*. The opinions, beliefs, reasons and argument of the commissioner *should be expressed in the memorandum of decision*, if any be filed, so far as they may be helpful in the decision of the case." (Emphasis added.)

Thus, by the express terms of § 31-301-3 of the regulations, the scope of the commissioner's finding and award is limited to the "ultimate, relevant and material facts essential to the case"; *Luciana* v. *New Canaan Cemetery Assn.*, No. 3644, CRB-7-97-7 (August 12, 1998); and "need not contain the reasons for [a] commissioner's conclusions . . . ." *Webb* v. *Pfizer, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 69, 73 (1995). In other words, the commissioner is "not required to explain

. . . how he has arrived at a final decision after culling through the evidence." *Loomis* v. *Colchester Egg Farm*, No. 3047, CRB-5-95-4 (December 10, 1996).

In the present case, we disagree with the Appellate Court's conclusion that the commissioner's finding and award, in which he made twenty-one factual findings before stating that the plaintiff had been discharged discriminatorily in violation of § 31-290a, improperly failed to state the burden-shifting analysis required for claims brought pursuant to § 31-290a (a). The *Ford* analysis is a legal standard; it is not a material fact nor is its recitation necessary to the commissioner's factual determination. Accordingly, we conclude that, pursuant to § 31-301-3 of the regulations, the commissioner was not required to include the burden-shifting analysis in his finding and award.[6]

We agree, however, with the Appellate Court's ultimate determination that, although the commissioner did not recite the *Ford* burden-shifting analysis in his finding and award, there is nothing in the record to indicate that he had not applied the relevant analysis in arriving at his decision. We reach this conclusion based, in large part, on the fact that the parties unequivocally agreed that the *Ford* burden-shifting analysis was the proper legal standard to be applied by the commissioner to his decision in this case. Both sides thoroughly addressed the application of the *Ford* analysis to the particular facts of this case in their briefs to the commissioner. In the absence of any indication to the contrary, the Appellate Court properly concluded that the com-

---

[6] In order to provide necessary guidance to workers' compensation commissioners adjudicating § 31-290a claims, and in order to facilitate appellate review of such cases in the future, however, we urge commissioners to file a memorandum of decision in such cases that sets forth the commissioner's application of the *Ford* burden-shifting analysis. Such a memorandum of decision ordinarily will be "helpful in the decision of the case"; Regs., Conn. State Agencies § 31-301-3; both at the fact-finding and appellate levels.

missioner applied the agreed upon legal standard. See, e.g., *Chernovitz* v. *Preston Trucking Co.*, 52 Conn. App. 570, 575, 729 A.2d 222 (1999) ("The commissioner's decision does not contain specific statements as to the standard of proof or the burden of proof. Briefs of the parties were submitted to the commissioner, however, in which the plaintiff correctly set out the burden of proof as stated in *Ford*."). Our conclusion is further buttressed by the fact that the defendants failed to establish, by way of the record, that the commissioner had not applied the *Ford* burden-shifting analysis. In other words, the defendants failed to produce a record sufficient to support their claim.[7]

As is always the case, the appellants, here the defendants, bear the burden of providing a reviewing court with an adequate record for review. Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"); *Daigle* v. *Metropolitan Property & Casualty Ins. Co.*, 257 Conn. 359, 364, 777 A.2d 681 (2001) (same). "Under normal circumstances, this court will not remand a case to correct a deficiency that the appellant should have remedied." *Plati* v. *United Parcel Service*, 33 Conn. App. 490, 494–95, 636

---

[7] The defendants rely on the Appellate Court's decision in *Daubert* v. *Naugatuck*, 71 Conn. App. 600, 803 A.2d 343 (2002), and our decision in *Diaz* v. *Housing Authority*, 258 Conn. 724, 785 A.2d 192 (2001), for the proposition that the Appellate Court incorrectly concluded that the commissioner had applied the *Ford* burden-shifting analysis. These cases, however, are inapposite. The defendants claim that, pursuant to *Daubert* v. *Naugatuck*, supra, 613, the Appellate Court improperly inferred the application of the *Ford* analysis based on the parties' submission of briefs on the issue. This court since has overruled the Appellate Court's decision. See *Daubert* v. *Naugatuck*, 267 Conn. 583, 592, 840 A.2d 1152 (2004). Therefore, *Daubert* is unavailing. The defendants' reliance on *Diaz* also is misplaced. In *Diaz* v. *Housing Authority*, supra, 729, we concluded that the commissioner's *failure to apply* the *Ford* analysis was improper. In the present case, however, there is no indication that the commissioner failed to apply the *Ford* analysis; rather, the issue is whether the commissioner *properly applied* the analysis despite failing to recite it in the finding and award.

A.2d 395 (1994). The Appellate Court has reasoned, and we agree, that because a plaintiff may pursue a claim pursuant to § 31-290a either through the workers' compensation commission or in the Superior Court, on appeal the proceedings before the commissioner are, in effect, comparable to judicial proceedings. Id., 494. Thus, the fact that this appeal comes to us from the workers' compensation commission does not relieve the defendants of their burden of providing this court with an adequate record for review. Id., 495 ("the [appellant] was not absolved of the requirement of filing a motion for articulation and seeking appropriate review in this court, where such review was necessary to create an adequate record for our review of [the] claim").

As we already have noted, the commissioner made twenty-one factual findings before concluding, without providing any analysis, that the plaintiff was "entitled to reinstatement of employment because her separation from work was a discriminatory discharge under [§] 31-290a." Although, as we also have stated, the commissioner was not required to explain his reasoning, the Appellate Court could not conclude, without more, that the commissioner's decision was improper. This is not, however, a failure of the commissioner. Rather, the defendants should have sought to amplify the record such that the Appellate Court, and this court in turn, adequately could review their claims. The defendants could have accomplished this through a motion requesting a memorandum of decision or, as the Appellate Court noted, a motion for articulation.[8] We discuss each of those options in turn.

[8] The defendants claim that Appellate Court improperly "mandated" that they file a motion to correct. To the extent that the Appellate Court addressed a motion to correct, it was solely in response to the defendants' claims that the commissioner did not articulate the *factual* basis for the alleged discrimination. See *Cable* v. *Bic Corp.*, supra, 79 Conn. App. 183. This issue, however, is not before us and we therefore decline to consider it.

We first note that the record does not reveal that the defendants requested that the commissioner file a memorandum of decision. Section 31-301-3 of the regulations expressly provides in relevant part that, "[t]he opinions, beliefs, *reasons* and *argument* of the commissioner should be expressed in the memorandum of decision, if any be filed, so far as they may be helpful in the decision of the case." (Emphasis added.) Thus, the commissioner may, sua sponte or at the request of a party, file a memorandum of decision explaining the reasoning of a decision, if the commissioner deems it helpful. See *Webb* v. *Pfizer, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 70–71; *Loomis* v. *Colchester Egg Farm*, supra, No. 3047, CRB-5-95-4. In the present case, although the commissioner did not file a memorandum of decision, the defendants could have requested that he do so.

The defendants also could have fortified the record by filing a motion for articulation. Although the regulations do not provide expressly for motions for articulation, such motions previously have been both considered and granted by workers' compensation commissioners and the compensation review board. See *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 420 n.5, 815 A.2d 94 (2003) (noting that, in response to motion, commissioner filed articulation stating rationale for decision); *Walker* v. *Hartford*, No. 4605, CRB-1-03-1 (December 30, 2003) (commissioner granted motion for articulation); *Jarema* v. *United Technologies Corp.*, No. 2065, CRB-8-94-6 (April 29, 1996) (same); *Adams* v. *American Cyanamid Co.*, No. 1995, CRB-7-94-3 (August 30, 1995) (compensation review board granted motion for articulation). "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by

clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 204, 819 A.2d 227 (2003); see also *Miller* v. *Kirshner*, 225 Conn. 185, 208, 621 A.2d 1326 (1993). In workers' compensation cases, "motions [for articulation] are granted when the basis of the commissioner's conclusion is unclear." *Peters* v. *Corporate Air, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 91, 92 (1995); see id., citing *State* v. *Wilson*, 199 Conn. 417, 434, 513 A.2d 620 (1986) ("[a]n articulation may be necessary where the trial court fails to completely state any basis for its decision; or where the basis, although stated, is unclear" [internal quotation marks omitted]).

As the Appellate Court noted, the defendants in the present case could have created an adequate record for review by requesting an articulation from the commissioner. Because the commissioner's finding and award properly was limited to factual findings, it is unclear as to the manner in which he applied the *Ford* burden-shifting analysis to conclude that the plaintiff's discharge was discriminatory pursuant to § 31-290a. Accordingly, we agree with the Appellate Court that the present case is one in which a motion for articulation, requesting that the commissioner expound on his application of the *Ford* analysis, would have been appropriate.[9]

The defendants contend that, to the extent that a motion for articulation is permitted in workers' com-

[9] The Appellate Court did not, as the defendants claim, mandate that they file a motion for articulation. Indeed, the Appellate Court merely concluded that the record provided by the defendants was insufficient to support their claims, thereby precluding the court from rendering judgment in their favor. See *Cable* v. *Bic Corp.*, supra, 79 Conn. App. 186–87. The Appellate Court further noted that the defendants could have remedied the deficiency by filing a motion for articulation. Id., 186.

pensation cases, it has been treated as a motion to correct.[10] In other words, the defendants claim that, in a workers' compensation case, a motion for articulation may request amplification of the commissioner's factual findings but cannot be used to address the commissioner's legal conclusions. We disagree.

Section 31-301-4 of the Regulations of Connecticut State Agencies provides in relevant part: "If the appellant desires to have the finding of the commissioner corrected, he must, within two weeks after such finding has been filed, unless the time is extended for cause by the commissioner, file with the commissioner his motion for the correction of the finding . . . ." "Such a motion is the proper vehicle for requesting corrections or additions to the factual findings based upon the evidence in the record." *Persico* v. *Sikorsky Aircraft Corp.*, No. 4464, CRB-4-01-12 (November 15, 2002). By contrast, as we previously have noted, motions for articulation generally are employed "when the basis of the commissioner's conclusion is unclear." *Peters* v. *Corporate Air, Inc.*, supra, 14 Conn. Workers' Comp. Rev. Op. 92; see also *Walker* v. *Hartford*, supra, No. 4605, CRB-1-03-1 (commissioner denied motion to correct; granted motion for articulation); *Luciana* v. *New Canaan Cemetery Assn.*, supra, No. 03644, CRB 7-97-7 (party filed both motion to correct and motion for articulation, both of which commissioner denied). Therefore, we reject the defendants' argument that, in workers' compensation cases, motions for articulation are synonymous with motions to correct.

---

[10] The defendants rely on *Estate of Melendez* v. *Valley Metallurgical*, No. 4178, CRB-2-00-1 (May 24, 2001), for the proposition that motions for articulation, as they commonly are used in civil or criminal cases, are not applicable to workers' compensation cases. Our review of that case reveals no such distinction. In fact, the compensation review board noted in *Estate of Melendez* that, "[the workers' compensation commission] generally allow[s] Motions for Articulation." Id.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.