MARY K. MORAN *v.* MEDIA NEWS GROUP, INC.
(AC 27443)

Flynn, C. J., and Lavine and West, Js.

Argued November 27, 2006—officially released April 10, 2007

*Michael N. LaVelle*, for the appellant (defendant).

*Matthew S. Hirsch*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This appeal concerns a claim of discriminatory discharge under our Workers' Compensation Act (act), General Statutes § 31-275 et seq. General Statutes § 31-290a (a) provides: "No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." Here, the employer voluntarily agreed, at an informal hearing held pursuant to the act, to accommodate the employee's need for physical therapy following a work-related injury but later discharged the employee, stating that the physician's note substantiating her medical need for continued physical therapy did not conform to the parameters of the agreement. The workers' compensation commissioner concluded that the employer's stated reason for discharging the employee was a pretext for a discriminatory discharge. We affirm the decision of the workers' compensation commissioner.

The plaintiff, Mary K. Moran, claims that she was discharged by the defendant, Media News Group, Inc., in violation of § 31-290a after she made use of an informal hearing to request a workplace accommodation to which the defendant's agent agreed. The commissioner concluded, largely on the basis of credibility determinations, that the defendant wrongfully discharged the plaintiff for exercising her right to reasonable and necessary medical care. The defendant appeals[1] from the decision, claiming that the commissioner improperly (1) found that (a) § 31-290a required the defendant to

---

[1] With respect to claims raised under General Statutes § 31-290a, "[a]ny party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court." General Statutes § 31-290a (b).

provide the plaintiff with a workplace accommodation, (b) the plaintiff was exercising her right to medical care by requesting an accommodation, (c) the plaintiff should have been told that she was expected to report to the main office when her request for an accommodation was denied and (d) a violation of § 31-290a occurred, "when the only evidence was that the [defendant] restored [the plaintiff] to her former position," (2) refused to grant the defendant's motion to correct and (3) awarded damages on an assumption rather than on the evidence.

The following facts, as found by Commissioner Michelle D. Truglia,[2] form the basis of the defendant's claim. The plaintiff was employed by the defendant, which publishes The Connecticut Post (newspaper). On February 8, 2002, the plaintiff suffered a trimalleolar fracture-dislocation of her left ankle at work. At the time, the plaintiff was the newspaper's New Haven County editor, having been employed by the defendant for twenty-seven years. She performed her duties in the defendant's main office in Bridgeport (newsroom), where she was responsible for covering news in the lower Naugatuck Valley and greater Milford areas and supervising six reporters. The defendant also had satellite offices in Derby (Derby bureau) and Milford.

The plaintiff's recovery was slow, and she was absent from the newsroom for twelve weeks. After each appointment with her physician, the plaintiff reported the progress of her recovery to her supervisor, Michael Daly, who was the newspaper's managing editor. The plaintiff received a letter dated April 24, 2002, from

[2] Commissioner Truglia made fifty-eight findings of fact and drew thirty-three conclusions in her finding and award. In doing so, the commissioner took administrative notice of all correspondence to and from the workers' compensation commission, and all hearing notices and legal documents related to the dispute, including but not limited to the notes taken by Commissioner Robin L. Wilson at the May 30, 2002 informal hearing.

Sharon Ferguson, the defendant's human resource manager, informing her that she had exhausted all of her medical leave[3] and that she must return to work or her employment would be terminated.[4] Although she continued to receive physical therapy,[5] the plaintiff returned to work, full-time without restrictions, on May 2, 2002.[6] During the month of May, 2002, the defendant permitted the plaintiff to perform her duties in the Derby bureau one day a week, as a partial accommodation of her physical therapy appointments in Shelton.

On May 30, 2002, an informal hearing was held before Commissioner Robin L. Wilson, pursuant to General Statutes § 31-297a. The subject of the informal hearing was to determine whether the defendant would permit the plaintiff to increase the number of days that she performed her duties in the Derby bureau from one to two to accommodate her physical therapy schedule. Timothy Bishop, the plaintiff's counsel, and Ferguson attended the informal hearing.[7] Commissioner Wilson's

---

[3] The defendant's policy limits an employee's absence to whatever benefits he or she was entitled under the federal Family Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.

[4] The April 24, 2002 letter to the plaintiff from Ferguson stated in relevant part: "You have exhausted all leave of absence available to you under the policies of the Connecticut Post and state and federal law. We have received no statement of a date on which you may be expected to return to regular work. . . .

"In view of these current circumstances, we must make arrangements for the performance of the duties of your position. You must contact us immediately concerning this matter. If we do not hear from you by Wednesday May 1, 2002, your employment with the Connecticut Post will be terminated. . . ."

[5] The plaintiff received physical therapy three times a week for an extended period of time, regardless of whether the defendant facilitated her access to her physical therapist, who was located in Shelton.

[6] The plaintiff's treating physician, Mark E. Wilchinsky, certified on May 1, 2002, that the plaintiff "has now recovered sufficiently to be able to return to . . . (regular) work duties on 5/2/02 . . . . Remarks: must wear sneakers."

[7] The plaintiff testified that due to traffic congestion, she was unable to arrive by the time the informal hearing commenced and, therefore, did not participate in it.

notes indicate that an agreement was reached by the parties, to wit, "[the plaintiff] to work up to two days out of the [Derby bureau] upon submission of medical substantiation of continued restrictions and need for physical therapy."[8] The agreement limited the accommodation to six weeks duration. Nothing in Commissioner Wilson's notes, or other portions of the record of the informal hearing, indicates that the defendant objected in any way to the agreement.

Believing that an agreement had been reached at the informal hearing, the plaintiff reported the agreement to Daly and her assistant editor, Edward Crowder, and obtained medical substantiation (note) from Mark E. Wilchinsky, her treating orthopaedic surgeon. The May 30, 2002 note stated: "In order for the patient to recover, she will need to work in the proximity to the location where she gets [physical therapy three times a week] (Derby)." Although the note stated that the plaintiff needed physical therapy three times a week for an unspecified period of time, the plaintiff acknowledged that the defendant had agreed to permit her to work in the Derby bureau only two days a week for six weeks. When she received the note, the plaintiff attempted to explain to Ferguson the discrepancy between it and the agreement, but she was denied the opportunity.

On June 4, 2002, Ferguson and Frank Keegan, editor of the newspaper, met with the plaintiff. At the meeting, Keegan handed the plaintiff a memorandum (termination memo), which informed her that that day was her last day of employment. The termination memo referred to the note that stated that the plaintiff needed to work in proximity to her physical therapist and that she

---

[8] Commissioner Truglia found that the parties had not consummated an enforceable agreement under General Statutes § 31-297a because they did not sign it. We need not determine whether the agreement was enforceable. The important point is that the commissioner found that Ferguson assented to the agreement and clearly was aware of its terms.

required physical therapy three times a week. The stated basis of her discharge was the note's failure to indicate when she could return to work in the newsroom.[9] The termination memo made no mention of the agreement reached at the informal hearing to limit the plaintiff's request to six weeks. There was no evidence that the plaintiff was permitted to resume her normal duties at the newsroom after her request for an accommodation was denied.

The plaintiff filed a claim with the workers' compensation commission pursuant to § 31-290a (b) (2).[10] A formal hearing on the plaintiff's claim of unlawful discrimination was held on August 13 and November 5, 2003, and February 4, 2004, before Commissioner Truglia, who issued a finding and award dated August 5, 2004, concluding that the plaintiff had been discharged wrongfully under § 31-290a for exercising her right to reasonable and necessary medical care. The defendant

---

[9] The termination memo stated: "In April of 2002 you exhausted all leave of absence available to you under the policies of the Connecticut Post and state and federal law.

"It was not until May 1, 2002 that we received a note from your physician indicating that you had recovered sufficiently enough to return to work on May 2, 2002. That certificate also stated that you could return to regular duties, with the only exception being that you must wear sneakers.

"Upon your return we had a discussion in which you assessed that you were not fully recovered and that you still had many difficulties. To accommodate you we agreed to allow you [to] park in front of the building, Mike Daly even offered to swap parking spaces with you. Also, we agreed to allow you to work from our Valley Bureau once a week until May 31, 2002.

"On May 30, 2002 the Human Resource Department received a note from your doctor, stating that you need to work in the proximity of the location (Derby) where you receive physical therapy—three times per week. This note did not indicate an approximate time as to when we could expect you back to work in our main office.

"Regretfully we must inform you that we cannot honor this request. It is imperative to our business that an employee with your level of responsibility perform your duties from our Bridgeport location. Therefore, today will be your last day of work."

[10] The plaintiff does not claim that the defendant breached the agreement reached at the informal hearing.

appealed. On December 1, 2004, this court dismissed the appeal for lack of a final judgment.

Thereafter, the commissioner opened the record on July 21, 2005, to hear evidence as to the plaintiff's claim for damages. In a finding dated February 17, 2006, the commissioner awarded the plaintiff damages of $165,726.48, reinstatement to a position of similar seniority, responsibility, salary, work hours and conditions to that which she had at the time her employment was terminated, as well as attorney's fees of $55,242.16. The defendant filed the present appeal. Additional facts will be discussed as we consider the defendant's claims.

I

The defendant has raised four claims that the commissioner's findings were clearly erroneous. It claims that the commissioner improperly found that (a) § 31-290a required it to provide the plaintiff with a workplace accommodation, (b) the plaintiff was exercising her right to medical care by requesting an accommodation, (c) the plaintiff should have been told that she was expected to report to the newsroom when her request for an accommodation was denied and (d) the defendant violated § 31-290a because "the only evidence was that the [defendant] restored the plaintiff to her former position." We conclude that the commissioner's findings were not clearly erroneous.

We first determine our standard of review. "Cases involving claims of discriminatory retaliation brought pursuant to § 31-290a . . . are employment discrimination actions, which are usually filed as plenary civil actions in the Superior Court." *Mele* v. *Hartford,* 270 Conn. 751, 766, 855 A.2d 196 (2004). Our Supreme Court has looked to federal case law to determine "what standard of review was appropriate in an employment discrimination case, when such cases present mixed questions of both law and fact." Id., 767; see *Brittell* v.

*Dept. of Correction,* 247 Conn. 148, 164–65, 717 A.2d 1254 (1998) (discussing relevant federal case law). It "concluded that under the fact-bound nature of determinations regarding what actions, as a matter of law, may constitute employment discrimination, a clearly erroneous standard was most appropriate. . . . Under such a standard, [a] finding . . . is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Mele* v. *Hartford,* supra, 767. Under this standard, an appellate court "does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Valdes* v. *Yankee Casting Co.,* 94 Conn. App. 140, 145, 891 A.2d 994 (2006).

Claims of employment discrimination are evaluated under the burden shifting analysis set forth in *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.,* 216 Conn. 40, 53–54, 578 A.2d 1054 (1990). See *Mele* v. *Hartford,* supra, 270 Conn. 766. "Section 31-290a (a) prohibits an employer from discharging or otherwise discriminating against an employee because the employee had filed a claim for workers' compensation benefits or otherwise exercised her rights under the act." Id., 767. "The plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate,

nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the [fact finder] . . . that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) Id., 768. The plaintiff, however, bears the ultimate burden of proving that the defendant intentionally discriminated against her. Id., 768–69.

"Under the [*Ford*] burden-shifting analysis, establishing a prima facie case of discrimination creates a presumption that the defendant acted illegally. . . . To establish a presumption is to say that a finding of the predicate fact (here the prima facie case) produces a required conclusion in the absence of explanation . . . . To establish a prima facie case of discrimination under § 31-290a, the plaintiff must show that she was exercising a right afforded her under the act and that the defendant discriminated against her for exercising that right." (Citation omitted; internal quotation marks omitted.) Id., 769.

"[T]he plaintiff must show a causal connection between exercising her rights under the act and the alleged discrimination she suffered. Implicit in this requirement is a showing that the defendant knew or was otherwise aware that the plaintiff had exercised her rights under the act. See *Cifra* v. *General Electric Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (to establish prima facie case of discrimination, the plaintiff must first present sufficient evidence . . . that is, evidence sufficient to permit a rational trier of fact to find [1] that she engaged in protected [activity] . . . [2] that the

employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action)." (Internal quotation marks omitted.) *Mele* v. *Hartford*, supra, 270 Conn. 776.[11]

## A

The defendant first claims that the commissioner improperly found that the act required it to provide the

[11] The commissioner concluded that the plaintiff had sustained her initial burden of proof that a preponderance of the evidence gave rise to an inference of unlawful discrimination under General Statutes § 31-290a. On rebuttal, Keegan testified that communications between the plaintiff and the other editors and between the plaintiff and him were severely hampered by the plaintiff's absence from the newsroom. Keegan also testified that the quality of the newspaper suffered when the plaintiff worked in the Derby bureau, but he never shared his concerns with anyone. Keegan testified further that since arriving at the newspaper in the fall of 2001, he wanted to reorganize the newsroom to increase efficiency. The commissioner concluded that the defendant had met its burden on rebuttal by offering testimonial evidence of a legitimate, nondiscriminatory reason for dismissing the plaintiff. Nevertheless, the commissioner found the defendant's evidence "unworthy of belief and that a discriminatory reason under § 31-290a, more likely than not, motivated" the defendant to terminate the plaintiff's employment.

Daly and Crowder testified "in direct contravention" of the testimony given by their superior, Keegan. The commissioner concluded that it "took great courage" on the part of Daly and Crowder to do so, and for that reason, their testimony was persuasive. She concluded that there was "[n]o credible evidence whatsoever" that the quality of the newspaper suffered when the plaintiff performed her responsibilities in the Derby bureau. The telephone was the lifeblood of her work. Although Keegan testified that he wanted to increase the newspaper's efficiency, he never communicated his plans to anyone. After the plaintiff was discharged, no other positions were eliminated.

Robert Laska, president of the defendant and publisher of the newspaper, also testified at the formal hearing. The commissioner found that regardless of the subject he was asked to corroborate, "his testimony was deliberately evasive, vague and evidenced a publisher so detached from daily personnel decisions as to render his testimony virtually useless." Ferguson's testimony was "so riddled with inconsistencies as to render her testimony beyond credibility on the pivotal issues."

plaintiff with a workplace accommodation. We do not agree that the commissioner found that the defendant was required to provide a workplace accommodation for the plaintiff. On the basis of our review, we have concluded that the defendant improperly terminated the plaintiff's employment because she made use of an informal hearing, as provided under § 31-297a of the act,[12] to request an accommodation for her physical therapy needs and that the defendant voluntarily entered into the agreement.

The following additional facts are relevant to our resolution of the defendant's claim. At the formal hearing, Bishop testified that an agreement had been reached at the informal hearing consistent with Commissioner Wilson's notes that the plaintiff could work in the Derby bureau two days a week for six weeks; Ferguson, however, denied that an agreement had been reached. According to Ferguson, she returned to the newsroom after the informal hearing and discussed the plaintiff's request for an accommodation with Keegan and Robert Laska, president of the defendant and publisher of the newspaper. Laska testified that he could not recall the discussion. The commissioner found that Keegan was not in the newsroom that day. The plaintiff

---

[12] General Statutes § 31-297a provides in relevant part that "[i]n any informal hearing held by the commissioner . . . in regard to *compensation* under the provisions of this chapter, any recommendations made by the commissioner . . . at the informal hearing shall be reduced to writing and, if the parties accept such recommendations, the recommendations shall be as binding upon both parties as an award by the commissioner . . . ." (Emphasis added.)

" 'Compensation' means *benefits or payments* mandated by the provisions of this chapter, including, but not limited to, indemnity, medical and surgical aid or hospital and nursing service required under section 31-294d and any type of payment for disability, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, payments made under the provision of section 31-284b, 31-293a or 31-310, or any adjustment in benefits or payments required by this chapter." (Emphasis added.) General Statutes § 31-275 (4).

had no substantive discussions with Ferguson or Keegan between the time of the informal hearing and the date Keegan terminated her employment.

The commissioner concluded that as the defendant's human resource manager and its representative at the informal hearing, Ferguson had an obligation to report the six week accommodation agreement to Keegan before termination of the plaintiff's employment was considered. The commissioner also concluded that the termination memo that was handed to the plaintiff at the June 4, 2002 meeting indicated that Keegan's principal concern was the open-ended nature of the plaintiff's need for physical therapy. Ferguson was privy to the termination memo and knew that the stated basis of the termination was inconsistent with the agreement, which provided that the plaintiff could work in the Derby bureau two days a week for six weeks. The commissioner concluded, therefore, that Ferguson either deliberately failed to report that the agreement was limited to six weeks or that Keegan deliberately ignored the six week limitation when he wrote the termination memo.

The commissioner further concluded that there was no credible evidence that the plaintiff posed her request for an accommodation as an ultimatum. Also, the commissioner concluded that if the defendant denied the plaintiff's request, the plaintiff had a reasonable expectation that she would be allowed to return to her regular duties in the newsroom. Instead, she was given a prepared termination memo and five checks representing salary and back pay. An open-ended need for physical therapy, which both Keegan and Ferguson knew or should have known was inconsistent with the agreement, was in the commissioner's view a pretext to terminate the plaintiff's employment simply for making use of an informal hearing to request an accommodation

to attend physical therapy. The commissioner concluded that the plaintiff was attempting to pursue "reasonable and necessary" medical care under the provisions of the act at the time of the termination of her employment.

The defendant argues that it had no duty to accommodate the plaintiff's request to perform her duties in the Derby bureau two days a week for six weeks. We agree. "The act . . . does not afford an employee the general right to be afforded reasonable accommodations for her physical disabilities." Id., 772.[13] "No provision of the act affords an employee the right to have specific office space, proximal parking or exemption from work tasks. Whether the plaintiff had physician-ordered restrictions does not affect this conclusion." Id., 773.

The defendant relies on *Mele* v. *Hartford*, supra, 270 Conn. 751, to support its claim that it did not terminate the plaintiff's employment for a discriminatory reason. The facts of *Mele*, however, are not the facts of this case. The plaintiff in *Mele* filed a § 31-290a claim, asserting that her direct supervisors had discriminated against her for exercising her rights under the act. Due to the alleged discrimination, she claimed that she was forced to take an unpaid leave of absence from her job as a guidance counselor for the defendant's board of education. Id., 755. In reversing the decision of the commissioner in that case, our Supreme Court made clear that the "act is not a general reasonable accommodations piece of legislation." (Internal quotation marks omitted.) Id., 772. Furthermore, on the facts of the case, our Supreme Court concluded that the accommodations the plaintiff requested were made as a matter of her employment, i.e., transfer to another school, paid

---

[13] Pursuant to General Statutes § 31-313, an employee has the right to file a claim with the commissioner "requesting transfer to suitable work during her period of medical treatment or rehabilitation or because of physical incapacity." *Mele* v. *Hartford*, supra, 270 Conn. 772.

sabbatical, sick time, and not pursuant to the benefits to which she was entitled under the act. Id., 771–74. She never invoked the provisions of General Statutes § 31-313. *Mele* v. *Hartford*, supra, 773. Furthermore, her supervisors were unaware that she had received benefits under the act years before. Id., 761–62.

The facts of this case are more like those in *Cable* v. *Bic Corp.*, 79 Conn. App. 178, 830 A.2d 279 (2003), aff'd, 270 Conn. 433, 854 A.2d 1057 (2004). In *Cable*, the plaintiff had been employed by the defendant corporation for thirty-two years and had sustained several work-related injuries; id., 179–80; and the parties had entered into several voluntary agreements related to compensation and disabilities to the plaintiff's hands. After the plaintiff's fourth surgery in March, 2000, she returned to light duty work, but the position later was eliminated and combined with another one that the employer declined to give to her. In January, 2001, the plaintiff worked as an ink inspector after the employer made some minor modifications to the position to accommodate her disabilities, but she was unable to attain the rapidity the employer wanted. The employer never gave the plaintiff a written warning about her performance and laid her off. Id., 180–81. The commissioner's award stated that the plaintiff was "entitled to reinstatement of employment because her separation from work was a discriminatory discharge under [§ 31-290a]." Id., 186.

The plaintiff's supervisor had stated that she was willing to give the plaintiff additional time to increase her speed and understood the issues surrounding the plaintiff's hand injuries. Id., 189. The employer had told the plaintiff that she would have an eight week training period for the ink inspector position but laid her off after only eighteen days of training for failing to attain the necessary rapidity in performance. The dismissal occurred despite management's understanding that the

plaintiff would not be able to attain top speed during her training period. Id., 189–90. The employer's discharging the plaintiff after making an agreement with her is roughly comparable to the defendant's reaching a voluntary agreement with the plaintiff in this case and then discharging her.

We conclude that *Cable* v. *Bic Corp.*, supra, 79 Conn. App. 178, supports the proposition that an employer voluntarily may enter into an accommodation agreement with an employee receiving benefits under the act. If the employer, however, terminates the employment for a reason the commissioner finds discriminatory under § 31-290a, the commissioner's decision may be affirmed if it is in accord with the burden shifting analysis of *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 40.

The fact that the act does not require an employer to accommodate an employee's needs is not the key to this appeal. The commissioner found that an informal hearing was held to determine whether the defendant would permit the plaintiff to increase the number of days that she performed her duties in the Derby bureau. See *Soares* v. *Max Services, Inc.*, 42 Conn. App. 147, 173 n.18, 679 A.2d 37 (statutory vehicle concerning informal hearings that concerns agreements between parties), cert. denied, 239 Conn. 915, 682 A.2d 1005 (1996).[14] She

---

[14] Informal workers' compensation hearings "are meetings held between an injured worker, the employer . . . and their respective representatives, if any, in the presence of a Workers' Compensation Commissioner during which the Workers' Compensation Commissioner attempts to work out a resolution or narrowing of the issues." A. Sevarino, Connecticut Workers' Compensation After Reforms (3d Ed. 2005) § 10.00, p. 1497. "The Workers' Compensation Commission has long felt that the informal hearing was the 'workhorse' and the primary vehicle to assist in resolution of claims where the parties cannot agree." Id., § 10.06, p. 1515. "Upon receipt of a request for a hearing, whether it be a formal hearing or informal hearing, a notice . . . will be issued by the district office to each of those parties identified on the request." (Citation omitted.) Id., § 10.02, p. 1505. "Notice serves not only to inform all parties of the date and time that they are expected to appear before the Workers' Compensation Commissioner but also to define

also found, pursuant to Commissioner Wilson's notes and Bishop's credible testimony, that Ferguson agreed to the accommodation on behalf of the defendant. If Laska and Keegan did not want to ratify the agreement, that was their prerogative, but, as the commissioner concluded, rather than discharging the plaintiff, they simply should have denied her request and told her to report to the newsroom.

We also are not persuaded by the defendant's argument that Commissioner Wilson had no business entertaining the plaintiff's request at the informal hearing. Commissioner Truglia found that the subject of the informal hearing was "whether or not the employer would be willing to allow the [plaintiff] to increase the number of days she worked in the [Derby bureau], from one to two days, to accommodate her physical therapy schedule." The defendant has not identified anything in the record that even suggests that it objected to the issue being considered at the informal hearing. All of the evidence and the findings of the commissioner indicate that the defendant willingly participated in the informal hearing and reached an agreement with the plaintiff. With respect to trials in the Superior Court, the appellate courts of this state have made it clear that a party cannot take a path at trial and change tactics on appeal. Furthermore, no party has the right to induce or invite error, if any, on the part of the trier of fact and seek reversal on appeal. See *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 505, 854 A.2d 749, cert. denied, 271

the scope of the controversy for the benefit of all parties so that they may reasonably prepare to address the precise claims in dispute." Id., p. 1507. "While the Workers' Compensation Commissioner cannot order an agreement at the informal hearing level, if the parties do come to an agreement, they should then reduce that agreement to a writing . . . which then is binding and enforceable on the parties just as in the case of a Finding, order or award . . . ." (Citation omitted.) Id., § 10.07, p. 1516. We again note that the plaintiff did not seek to enforce the agreement.

Conn. 928, 859 A.2d 581 (2004).[15] We think that that
equitable rule should apply to informal and formal pro-
ceedings before a workers' compensation commis-
sioner. A party may not attend an informal hearing, fail
to object to an issue being addressed, voluntarily enter
into an agreement and later claim that the commissioner
should never have entertained the issue that led to
an agreement.

Furthermore, the defendant has overlooked the sig-
nificance of Commissioner Truglia's finding that the
parties had reached an agreement at the informal hear-
ing. The issue significant to the commissioner was not
that the defendant failed to abide by the agreement
but that Ferguson denied that an agreement had been
reached. The commissioner's finding and award turned
on the credibility of the individuals who testified at the
formal hearing. Ferguson's denying that an agreement
had been reached was the foundation of the commis-
sioner's conclusion that Ferguson knew that the open-
ended physical therapy note was contrary to the
agreement. Ferguson declined to discuss the note with
the plaintiff as requested. The commissioner found that
because Ferguson knew that the plaintiff's request for
an accommodation was not open-ended, Keegan's deci-
sion to terminate the plaintiff's employment as stated
in the termination memo was a pretext for dismissing
the plaintiff. Because she found that Ferguson and Kee-
gan lacked credibility, the commissioner also found that
the defendant's explanation for dismissing the plaintiff

[15] "The term induced error, or invited error, has been defined as [a]n
error that a party cannot complain of on appeal because the party, through
conduct, encouraged or prompted the trial court to make the erroneous
ruling. . . . It is well established that a party who induces an error cannot
be heard to later complain about that error. . . . [T]o allow [a] defendant
to seek reversal [after] . . . his trial strategy has failed would amount to
allowing him to induce potentially harmful error, and then ambush the state
[and the trial court] with that claim on appeal." (Internal quotation marks
omitted.) *State* v. *DiLoreto*, 88 Conn. App. 393, 397–98, 870 A.2d 1095 (2005).

was "unworthy of belief and that a discriminatory reason under [§] 31-290a, more likely than not, motivated the [defendant] in terminating the [plaintiff]."

Our review of the record persuades us that the commissioner's finding and award concludes by implication[16] that the defendant could have refused the plaintiff's request for an accommodation and told her to report to the newsroom the next day, but that it could not discharge her because the note did not conform to the parameters of the agreement it voluntarily made with the plaintiff at an informal hearing. For the foregoing reasons, contrary to the defendant's assertion, we conclude that the commissioner did not find that the defendant was required to provide the plaintiff with a workplace accommodation. The plaintiff availed herself of an informal hearing, which she was entitled to do under the act, to reach an agreement with the defendant.

### B

The defendant's second claim is that the commissioner improperly found that the plaintiff was exercising her right to medical care. The defendant does not challenge that the plaintiff needed further physical therapy to recover from her compensable injury. As the defendant argues, the plaintiff testified that she did not have to work in the Derby bureau to attend physical therapy, but it was closer to her physical therapist and its layout was more accessible given her limited mobility. Although the plaintiff was not entitled to the requested accommodation under the act, the plaintiff thought she had nothing to lose by asking. After all, the defendant had permitted her to work in Derby one day a week during May, 2002. If the defendant did not want

---

[16] The commissioner concluded that "[a]fter the [plaintiff's] requested accommodation was refused, the [plaintiff] should have been told that she was expected to report the next day to the [newsroom]."

to grant the plaintiff's request, the commissioner concluded, the plaintiff "should have been told that she was expected to report the next day to the [newsroom]." We reject the defendant's claim.

## C

The defendant's next claim is that the commissioner improperly found that the defendant should have told the plaintiff to report to the newsroom after it denied her request to spend two days a week in the Derby bureau. The defendant argues that the commissioner was acting as a "super personnel department" and "second-guess[ing]" the defendant's business decisions. See *Alfano* v. *Costello*, 294 F.3d 365, 377 (2d Cir. 2002). We disagree with the defendant's characterization of the commissioner's finding. The commissioner's finding that the defendant should have told the plaintiff to report to the newsroom merely acknowledges the defendant's right to deny the plaintiff's request for accommodation under the act.

The defendant again has misconstrued the commissioner's finding. The commissioner did not find that the defendant's failure to grant the plaintiff's request to work in the Derby bureau two days a week was wrongful. The commissioner found that it was wrongful for the defendant to terminate the plaintiff's employment for pretextual reasons after a voluntary agreement had been reached during an informal hearing. The commissioner made findings concerning the quality of communication among the editors and the quality of the newspaper when the plaintiff was in the Derby bureau because those were the reasons Keegan said the plaintiff could not work in Derby two days a week. The commissioner found no evidence to support Keegan's claims and concluded that those reasons were false. Instead of telling the plaintiff that she had to work in the newsroom rather than in the Derby bureau, Keegan

discharged her. The commissioner concluded and found that Keegan's discharge of the plaintiff was motivated by a discriminatory animus. On the basis of our review of the record, we cannot say that the commissioner's finding that the defendant should have told the plaintiff to return to the newsroom after denying her request was clearly erroneous.

### D

The defendant's fourth claim is that the commissioner improperly found that it had violated § 31-290a "when the only evidence was that the [defendant] restored [the plaintiff] to her former position." The defendant's contention is that it permitted the plaintiff to return to the newsroom at the beginning of May, 2002, and that the plaintiff created a problem by taking the position that she could not report to the newsroom on a full-time basis, a position allegedly substantiated by the note. We conclude that the defendant again has misconstrued the commissioner's findings and conclusion. At the informal hearing, pursuant to Commissioner Wilson's notes, the plaintiff's counsel and Ferguson agreed that on two days a week for six weeks the plaintiff could fulfill her responsibilities to the defendant from the Derby bureau. Commissioner Truglia found on the basis of testimony from Daly and Crowder that the plaintiff was able to perform her duties from the Derby bureau and that communication and the quality of the newspaper did not suffer. See footnote 11. Neither Keegan nor Laska could cite any evidence to the contrary. The commissioner did not believe Keegan's explanation for discharging the plaintiff. The termination memo stated that the plaintiff was being dismissed because the note indicated that the plaintiff required physical therapy three times a week for an indeterminate period of time. Ferguson knew that the note was contrary to the agreement reached at the informal hearing, but she

failed to discuss the matter with the plaintiff. We therefore conclude that the commissioner's finding was not clearly erroneous.

## II

The defendant's next claim is that the commissioner improperly failed "to grant its motion to correct." On August 13, 2004, the defendant filed a motion requesting that the commissioner correct fifteen of her findings and conclusions. In its appellate brief, the defendant's claim is set forth in two brief paragraphs containing no legal analysis as to why the commissioner's failure to grant the motion to correct was improper. We decline to review this claim as it is inadequately briefed. See *Rivnak* v. *Rivnak*, 99 Conn. App. 326, 332 n.4, 913 A.2d 1096 (2007) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]). Furthermore, in the first paragraph of its argument, the defendant stated, "*the motion to correct was never acted upon.*" (Emphasis added.) We disagree. Page twenty-seven of the record is a copy of the commissioner's order denying the defendant's motion to correct.

## III

The defendant's final claim is that the commissioner improperly based her award on an assumption as to the plaintiff's rate of compensation, rather than on the evidence. In making this claim, the defendant contends that the parties stipulated that the plaintiff's position as New Haven County editor would have been eliminated in Keegan's reorganization[17] but that there would

---

[17] We also note that the commissioner concluded that Keegan's reorganization plan "might have served as a legitimate basis to terminate the [plaintiff's employment] but for the fact that these reasons were never related to the [plaintiff], or anyone else for that matter, contemporaneous with her termination."

have been an opening in the new position of Milford assistant metro editor. The plaintiff countered that the parties did not stipulate to that fact. On the basis of our review of the transcript containing the facts to which the parties stipulated, we find no stipulation that the plaintiff's position would have been eliminated, "but that there would have been an opening in the new position of Milford assistant metro editor." Furthermore, our review of the record and the commissioner's damages award demonstrates that the award was based on the evidence of the plaintiff's salary at the time the defendant terminated her employment. The claim therefore is without merit.

The decision of the workers' compensation commissioner is affirmed.

In this opinion the other judges concurred.