******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RUTH GLADSTEIN *v.* SARANN GOLDFIELD ET AL.
(AC 36316)

Beach, Mullins and Bishop, Js.

*Argued October 15, 2015—officially released March 8, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Hartmere, J.)

*Daniel J. Klau*, with whom was *Bradley K. Cooney*,
for the appellant (plaintiff).

*Louis B. Blumenfeld*, with whom, on the brief, were
*Lorinda S. Coon* and *Lawrence J. Merly*, for the appel-
lees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Ruth Gladstein, appeals from the judgment of the trial court denying her motion to substitute the trustee of her bankruptcy estate as the proper plaintiff and thereafter dismissing her action for lack of subject matter jurisdiction on the ground that she lacked standing to bring the present action. On appeal, although the plaintiff claims that the court erred in denying her motion to substitute, she acknowledges that she lacked standing to bring this action in her individual name. Accordingly, she concedes that if the court properly denied her motion to substitute, the court's judgment of dismissal likewise would be proper. On appeal, therefore, we confine our review to the question of whether the court properly denied the plaintiff's motion to substitute. Concluding that the court acted correctly, we affirm the judgment.

The following undisputed factual and procedural history is pertinent to our consideration of the issue presented in this appeal. In 1992, the plaintiff's mother executed a trust document in which the plaintiff was named as a 50 percent residual beneficiary. In 1997, the plaintiff's mother amended the trust document to reduce the plaintiff's interest to 10 percent. The action from which this appeal arises was brought by the plaintiff against the defendants, her sister, Sarann Goldfield, and her brother-in-law, Alvin Goldfield, claiming a misuse of trust funds and also undue influence in regard to the 1997 amendment to the trust. The plaintiff also named Attorney Martin Wolf and his law firm, Cohen and Wolf, P.C., as defendants. Attorney Wolf drafted the trust and the 1997 amendment and serves, as well, as the trustee. It is also relevant to this appeal that in 2008, the plaintiff, then a resident of Nevada, filed a petition in bankruptcy in the United States Bankruptcy Court for the District of Nevada. Nowhere in her filings in conjunction with the bankruptcy did the plaintiff list her status as a residual beneficiary of the trust created by her mother as an asset; nowhere in her filings did she list, as a chose in action, her claims or potential claims against the defendants herein regarding her potential interest in the trust.

That omission violated federal bankruptcy law, which requires a debtor to disclose all assets, including interests in trusts and potential legal claims, as part of the bankruptcy estate. See 11 U.S.C. § 541 (a) (1) (debtor must disclose "all legal or equitable interests of the debtor in property as of the commencement of the case") and § 541 (a) (7) (duty to disclose is continuous); see also *Burnes* v. *Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002) ("[t]he success of [the] bankruptcy laws requires a debtor's full and honest disclosure").[1]

In September, 2009, following her discharge in bankruptcy, the plaintiff then brought the present action

against the defendants in her own name. The plaintiff alleged, inter alia, that Sarann Goldfield and her husband, Alvin Goldfield, committed forgery and exerted undue influence in connection with the 1997 amendment of the trust. She also alleged that Attorney Wolf and his firm, Cohen and Wolf, P.C., breached their fiduciary duties to the trust by assisting the Goldfields in effectuating the amendment. However, once the plaintiff filed for bankruptcy, this claim belonged to the bankruptcy estate and, therefore, to the trustee in bankruptcy and not the plaintiff individually. In addition, because this asset was not disclosed, it remained the property of the trustee. See 11 U.S.C. § 554 (d) (property not disclosed during bankruptcy remains part of bankruptcy estate); *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 164–65, 2 A.3d 873 (2010) (undisclosed assets remain property of bankruptcy estate); see also *Burnes* v. *Pemco Aeroplex, Inc.*, supra, 291 F.3d 1288 ("[a]llowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them").

In sum, it is a fair reading of the procedural history of this matter that the plaintiff did not bring the existence of this claim to the attention of the bankruptcy court and the trustee appointed to oversee her assets. Instead, once she received a bankruptcy discharge in which this claim was not listed as an asset, she then brought the present action in her own name.

In response to the underlying complaint in this action, the defendants filed motions to dismiss on the ground that the plaintiff's alleged interest in the trust was properly an asset of the plaintiff's bankruptcy estate and, as such, an asset of the bankruptcy trustee. Thus, the defendants claimed, the plaintiff had no standing to bring this action. Because the plaintiff lacked standing, the defendants asserted, the court did not have subject matter jurisdiction over the action. Accordingly, the defendants claimed, they were entitled to a dismissal of the action.

The plaintiff concedes that she lacked standing to bring this action in her own name. For that reason, and in response to the defendants' motions to dismiss, the plaintiff filed a motion to substitute the bankruptcy trustee as the proper plaintiff pursuant to General Statutes § 52-109.[2] Through the motion to substitute the bankruptcy trustee as the real party in interest, the plaintiff sought to avoid dismissal of her action. In furtherance of her quest to have the bankruptcy trustee substituted as the plaintiff, and pursuant to § 52-109, the plaintiff urged the court to interpret the term "mistake," used in § 52-109, as it had been interpreted by the trial court, *Sheldon, J.*, in *DiLieto* v. *County Obstetrics & Gynecology, P.C.*, Superior Court, judicial district of

Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0150435-S (January 31, 2000) (26 Conn. L. Rptr. 345, 351), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003); but tacitly approved by our Supreme Court in *DiLieto* v. *County Obstetrics & Gynecology, P.C.*, 297 Conn. 105, 151, 998 A.2d 730 (2010) (*DiLieto II*) ("[u]nder § 52-109, substitution is permitted only when the trial court determines that the action was commenced in the name of the wrong plaintiff 'through mistake,' which properly has been interpreted to mean 'an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence . . .' "). Agreeing that the definition of "mistake" as cited in *DiLieto II* offered the proper guidance, the defendants, nevertheless, urged the court to deny the motion to substitute. After a hearing, the court, *Hartmere, J.*, relying on the definition of "mistake" advanced by the parties, concluded, inter alia, that the error was the result of the plaintiff's own negligence and denied the plaintiff's motion to substitute. Consequently, the court granted the defendants' motions to dismiss on the ground that the plaintiff lacked standing. This appeal followed.

On appeal, the plaintiff now changes course and argues that the *DiLieto II* definition of mistake, as advanced by all parties at trial and embraced by the trial court, was incorrect. Specifically, the plaintiff argues that the court, relying on *DiLieto II* and the plaintiff's own endorsement of that case's interpretation of "mistake," erroneously concluded that "mistake," as used in § 52-109, "mean[t] an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence . . . ." Despite advocating for that precise definition of "mistake" before the trial court, the plaintiff now argues that the court should have concluded that a mistake may result from a party's own negligence.

The defendants counter that the plaintiff's present claim is unreviewable because she did not raise the claim before the trial court and, more significantly, because she induced the court's use of the definition of mistake cited in *DiLieto II* when she specifically requested, in her trial court brief, that the court apply that definition of mistake found in *DiLieto II*. The defendants argue, as well, that the court properly applied the definition of mistake cited by our Supreme Court and, accordingly, they argue that the trial court did not abuse its discretion in denying the motion to substitute. On the basis of this record, we conclude that the plaintiff's claim is unreviewable.

We decline to review the plaintiff's claim because she induced the action of the court from which she now complains.[3] "[A] party cannot take a path at trial and change tactics on appeal." *Moran* v. *Media News Group, Inc.*, 100 Conn. App. 485, 501, 918 A.2d 921 (2007). "Moreover, [t]his court routinely has held that

it will not afford review of claims of error when they have been induced. . . . As we previously have explained, the term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [alleged] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Citations omitted; internal quotation marks omitted.) *State* v. *Martone*, 160 Conn. App. 315, 328, 125 A.3d 590, cert. denied, 320 Conn. 904, 127 A.3d 187 (2015).

Our review of the record reveals that the plaintiff induced the trial court to apply the definition of mistake adopted by Judge Sheldon in *DiLieto* v. *County Obstetrics & Gynecology, P.C.*, supra, 26 Conn. L. Rptr. 351, and later embraced by our Supreme Court in *DiLieto II*, supra, 297 Conn. 151. Specifically, in the trial court, the plaintiff and the defendants expressly cited and relied on the *DiLieto II* definition of "mistake" in their briefs filed in conjunction with the plaintiff's motion to substitute. Thus, the plaintiff cannot now disavow on appeal the legal argument that she advanced in the trial court. In short, she cannot now claim, as error, the court's adoption of the legal position she urged upon the court in support of her motion to substitute. See *State* v. *Martone*, supra, 160 Conn. App. 328.

The plaintiff requests, nevertheless, that we consider her claim under the plain error doctrine. "The plain error doctrine has been codified at Practice Book § 60-5, which provides in relevant part that [t]he court may reverse or modify the decision of the trial court if it determines . . . that the decision is . . . erroneous in law. . . . The plain error doctrine is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *LaBrec*, 270 Conn. 548, 559, 854 A.2d 1 (2004).

On the basis of this record, reversal for plain error is not warranted. Regardless of whether the court prop-

erly interpreted § 52-109, no manifest injustice results from our refusal to entertain an argument fashioned anew for appellate purposes, particularly where the freshly minted argument contradicts the position that the plaintiff advanced in the trial court. See *State* v. *Brunetti*, 279 Conn. 39, 59 n.32, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007). In sum, the plain error doctrine is not available to the plaintiff because the record in this matter does not reveal that any error exists in the trial court's judgment that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings.

Finally, the plaintiff urges this court, if we decline to find plain error, to utilize our supervisory powers to review her claim first raised on appeal. This claim warrants no discussion as it is facially inappropriate for the exercise of our supervisory powers. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155–161, 84 A.3d 840 (2014). Moreover, the plaintiff's request that we review her claim pursuant to our supervisory powers was summarily raised for the first time in her reply brief. As a result, we decline to review her claim. *2 National Place, LLC* v. *Reiner*, 152 Conn. App. 544, 548 n.4, 99 A.3d 1171 ("[i]t is well established that [c]laims . . . are unreviewable when raised for the first time in a reply brief" [internal quotation marks omitted]), cert. denied, 314 Conn. 939, 102 A.3d 1112 (2014).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Significantly, once a trustee is appointed to administer the bankruptcy estate, the trustee takes control of all the assets in the estate; see 11 U.S.C. § 323; including the ability to pursue, abandon, and make decisions in legal actions. 11 U.S.C. § 554 (a) (trustee may abandon assets); *Barger* v. *Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003) ("property of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy"). Therefore, if the plaintiff's interest in the trust and potential legal claim had been listed, both would have been the property of the bankruptcy estate and under the control of the bankruptcy trustee. See 11 U.S.C. § 704.

[2] General Statutes § 52-109 provides: "When any action has been commenced in the name of the wrong person as plaintiff, the court may, if satisfied that it was so commenced through mistake, and that it is necessary for the determination of the real matter in dispute so to do, allow any other person to be substituted or added as plaintiff." Prior to the court's ruling on the plaintiff's motion to substitute, the term "mistake" had been interpreted by the Superior Court, *Sheldon, J.*, to mean "an honest conviction, entertained in good faith and not resulting from the plaintiff's own negligence, that she is the proper person to commence the lawsuit." *DiLieto* v. *County Obstetrics & Gynecology, P.C.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0150435-S (January 31, 2000) (26 Conn. L. Rptr. 345, 351), rev'd on other grounds, 265 Conn. 79, 828 A.2d 31 (2003).

[3] Because we conclude that the plaintiff's claim is not reviewable, we need not determine whether the court's interpretation of the term "mistake" in § 52-109 was proper. We leave consideration of that issue to the day when such claim properly may come before us.